UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
JOSEPH WOLSKI and             )
CHRISTINA WOLSKI,             )
              Plaintiffs,     )
                              )
      v.                      )   CIVIL ACTION
                              )   NO. 18-12631-WGY
GARDNER POLICE DEPARTMENT,    )
MASSACHUSETTS STATE POLICE    )
DEPARTMENT, ERIC MCAVENE,     )
DANIAL WILDGRUBE,             )
MICHAEL TRAVERS,              )
MATTHEW PRESCOTT,             )
                              )
              Defendants.     )
_____)
```

YOUNG, D.J.                                    October 30, 2019

**MEMORANDUM & ORDER**

## I.     INTRODUCTION

Joseph and Christina Wolski (collectively, "the Wolskis") filed a complaint in this Court against individual officers of the Gardner City Police Department (the "Gardner Police") and the Massachusetts State Police Department (the "State Police"), as well as against the agencies themselves. See Verified Compl. Jury Demand ("Original Compl."), ECF No. 1.; First Am. Verified Compl. Jury Demand ("Am. Compl."), ECF No. 30. The Wolskis alleged that the State Police are liable under section 2 of the Massachusetts Tort Claims Act (chapter 258 of the Massachusetts General Laws) for "fail[ing] to adequately [train or] supervise

their respective employees" who then committed intentional torts against the Wolskis (count III). Id. ¶¶ 43-44, 48-49. The State Police also construe the Wolskis' amended complaint as alleging an intentional infliction of emotional distress claim against them (count V). See Mem. Law Supp. Def. Mass. State Police Dep't Mot. Dismiss Pls.' First Am. Verified Compl. ("Mem. Dismiss") 3 n.1, ECF No. 32.

The State Police seek dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) of all claims against them, arguing that they enjoy sovereign immunity and, moreover, that the Wolskis have failed to state actionable claims. See id. at 1-2. For the following reasons, the Court GRANTS the State Police's motion to dismiss for lack of subject matter jurisdiction, ECF No. 31. Accordingly, the Court does not reach the State Police's arguments about whether the Wolski's amended complaint states an actionable claim.

A.  **Factual Allegations**

The plaintiff, Joseph Wolski ("Officer Wolski"), was at all relevant times "a police officer employed by the . . . [Gardner Police]." Am. Compl. ¶ 9. On August 3, 2016, while "on duty and on patrol," Officer Wolski received a call from his co-worker, the defendant Eric McAvene ("Lieutenant McAvene"),[1] telling him

---

[1] Lieutenant McAvene was at all relevant times an employee of Gardner Police. Am. Compl. ¶ 4.

"to return to the [Gardner Police] station for an urgent meeting." Id. ¶ 10. When he arrived at the station, the Lieutenant McAvene and defendants Daniel Wildgrube ("Trooper Wildgrube"), Michael Travers ("Trooper Travers"), and Matthew Prescott ("Trooper Prescott") (collectively, the "Trooper Defendants") met Officer Wolski.[2] Id. ¶ 13. They "escorted Officer Wolski . . . into a windowless back room typically used for briefing officers prior to conducting raids (the 'briefing room')." Id. ¶ 14. Lieutenant McAvene represented to Officer Wolski that defense counsel for a suspect in a homicide investigation on which Officer Wolski worked had subpoenaed the Gardner Police for all "investigation-related communications." Id. ¶¶ 11-12, 16 (emphasis deleted). Though the individually named officer defendants never showed Officer Wolski the subpoena, id. ¶ 17, Lieutenant McAvene said that the subpoena requested the cellphone records of the officers involved in the investigation, including Officer Wolski's, id. ¶¶ 11-12, 16. The Wolskis allege, "[u]pon information and belief, [that] the subpoena does not exist and never did." Id. ¶ 18.

Under the pretext of the subpoena, "[Lieutenant] McAvene . . . ordered [Officer] Wolski to turn over his personal, private cellular phone to [the Trooper Defendants], and permit

---

[2] The Trooper Defendants were at all relevant times employees of the State Police. Am. Compl. ¶¶ 5-8.

the troopers to perform a 'data dump'. . . . for the purpose of collecting investigation-related communications from [his] . . . cell phone." Id. ¶ 19 (emphasis deleted). Officer Wolski initially objected to the order because he maintained that his personal phone did not contain work-related communications. Id. ¶ 20. Lieutenant McAvene repeated the order. Id. ¶ 21.

> Due to the defendant officers' representation that the [Gardner Police] officers involved in the aforementioned murder investigation were all under lawful subpoena, Officer Wolski reluctantly surrendered his personal cellphone to the defendant officers on the express condition that under no circumstances was [Officer] Wolski's personal and private media contained on the cell phone to be viewed, downloaded, copied, duplicated, transmitted or otherwise misappropriated or disseminated, and was to remain undisturbed and absolutely private.

Id. ¶ 22 (emphasis deleted).

Assuring Officer Wolski that they "were not collecting any of his personal private data," id. ¶ 23, "the defendant officers took [his] cell phone into an adjacent room and shut the door," id. ¶ 24. They re-emerged "[a]fter approximately 30-40 minutes . . . and demanded that Officer Wolski disclose to them his personal and private 'Apple I.D. and password.'" Id. ¶ 25. Officer Wolski initially objected, but eventually provided the defendant officers his Apple I.D. and password after they reassured him that they were only looking for investigation-related communications. Id. ¶ 28. Within a few weeks of this encounter, the Wolskis "discovered (through multiple independent

[4]

and credible sources) that their personal private media had been converted by the defendants and widely disseminated throughout the ranks of the Gardner Police Department and the [State Police]."³ Id. ¶ 30. The private media obtained from Officer Wolski's cell phone included video and still images of Officer Wolski and Mrs. Wolski "while being intimate." Id. ¶ 22 n.5.

B.  **Procedural History**

On December 21, 2018, the Wolskis filed a complaint in this Court against individual the Gardner Police and State Police officers, as well as against the agencies themselves. Original Compl. On April 18, 2019, the State Police moved to dismiss the claims against it under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def. Mass. State Police Dep't Mot. Dismiss ("Original Mot. Dismiss"), ECF No. 19.

With the permission of the Court, the Wolskis filed an amended complaint on May 9, 2019, see Pls.' Mot. Leave Am. Compl. ("Motion to Amend"), ECF No. 13; Electronic Order, ECF No. 29; Am. Compl., which mooted the State Police's original motion to dismiss, Electronic Order, ECF No. 35. In their amended complaint the Wolskis advance the same claims as they did in their original complaint. See Motion to Amend

---

³ The Wolskis allege that the private content on Officer Wolski's phone "was stored in a locked application requiring an additional and separate password" which "Officer Wolski never provided." Am. Compl. ¶ 22 n.6.

[5]

("Plaintiffs do not seek to change the substance of the original Complaint nor do they seek to add, subtract, or amend the five (5) causes of action asserted in the original Complaint."). They allege claims against the individually named officers under Massachusetts law and under sections 1983 and 1985 of the Civil Rights Act (found in title 42 of the United States Code). Am. Compl. ¶¶ 31-41, 56-59. They bring claims under Massachusetts law for negligent training and supervision (count III) and intentional infliction of emotional distress (count V) against the State Police.[4] Id. ¶¶ 42-49, 56-59. The State Police renewed its motion to dismiss on May 10, 2019. See Def. Mass. State Police Dep't Mot. Dismiss Pls.' First Am. Verified Compl., ECF No. 31; Mem. Law Supp. Def.'s Mot. Dismiss Pls.' First Am. Verified Compl. ("Renewed Dismiss Mem."), ECF No. 32.

The Wolskis did not submit an opposition to the renewed motion to dismiss before the motion session on July 30, 2019. During that hearing, the Wolskis' counsel requested a continuance, Emergency Mot. Continue Hr'g Def. Mass. State Police Dep't Mot. Dismiss, ECF No. 51; Electronic Clerk's Notes, ECF No. 50, and the Court allowed the Wolskis to file a written opposition within 30 days. Id. The Wolskis' lawyer filed an

---

[4] The Wolskis do not specifically name the State Police in count V, see Am. Compl. ¶¶ 56-59, but the State Police construes the Wolskis' Amended Complaint as including them in that claim. See Mem. Dismiss 3 n.1; Am. Compl. ¶ 58.

opposition to the renewed motion to dismiss with an accompanying memorandum on August 13, 2019. Pls.' Mot. Opp. Def. Mass. State Police Dep't Mot. Dismiss, ECF. No. 47; Mem. Supp. Pls.' Opp. Def. Mass. State Police Dep't Mot. Dismiss ("Renewed Opp'n Mem."), ECF No. 48.

This Court advised the parties at the hearing and in its electronic order that it would rule on the papers. Electronic Clerk's Notes, ECF No. 50.

## II. ANALYSIS

After careful consideration, the Court GRANTS the State Police's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) because the Commonwealth and its agencies enjoy sovereign immunity. Consequently, the Court lacks subject matter jurisdiction over the claims against the State Police. It thus has no occasion to opine on whether those claims would otherwise entitle the Wolskis to relief.

### A. Standard of Review

Jurisdictional questions are threshold issues which courts ought address first. See Ross v. Deutsche Bank Nat'l Tr. Co., 933 F. Supp. 2d 225, 229 (D. Mass. 2013) ("When presented with a motion to dismiss a claim under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), 'a district court . . . should ordinarily decide the 12(b)(1) motion first.'" (quoting Northeast Erectors Ass'n of BTEA v. Secretary of Labor,

[7]

Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995))). The party invoking federal jurisdiction, here the plaintiffs, bears the burden of proving[5] that the court from which they seek redress has jurisdiction over their claims. See Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)); see also Heinrich v. Sweet, 44 F. Supp. 2d 408, 412 (D. Mass. 1999) (citing Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)). For both the 12(b)(1) and 12(b)(6) motions to dismiss, the Court must "take as true all well-pleaded facts in the plaintiffs' complaint . . . and draw all reasonable inferences therefrom in [their] favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009) (citing Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003)); see also Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017)(citing Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 326-27 (1st Cir. 2016)).

---

[5] If the existence of federal subject matter jurisdiction involves a factual dispute, the proponent of federal jurisdiction must prove subject matter jurisdiction by a preponderance of the evidence. See Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992). The parties here do not dispute the facts relevant to jurisdiction.

[8]

### B. The Court Lacks Jurisdiction over the Tort Claims Against the State Police

The State Police argues that the two state-law tort claims against it (counts III and V) should be dismissed because the agency enjoys sovereign immunity from suit in federal court. Renewed Dismiss Mem. 3-4. The Wolskis' argument against 12(b)(1) dismissal is difficult to discern. First, though they do not say so specifically, by bringing the claims under section 2 of the Massachusetts Tort Claims Act, they implicitly argue that the statute waives the State Police's immunity. See Am. Compl. ¶¶ 42-49. Additionally, the Wolskis argue: (i) that Congress abrogated the Commonwealth's immunity when it enacted section 1983 of the Civil Rights Act and, (ii) that the prospective-compliance exception to sovereign immunity applies in this case. Renewed Opp'n Mem. 3. The Court dismisses all the claims against the State Police because, as an agency of the Commonwealth, sovereign immunity shields it, Santiago v. Keyes, 839 F. Supp. 2d 421, 427-28 (D. Mass. 2012) (Neiman, M.J.), and the Commonwealth has not waived such immunity, Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003), nor has Congress abrogated it, Santiago, 839 F. Supp. 2d at 427 (citing Quern v. Jordan, 440 U.S. 332, 341-42 (1979)).

"[F]ederal courts are courts of limited subject matter jurisdiction . . . ." Gonzalez-Cancel v. Partido Nuevo

Progresista, 696 F.3d 115, 119 (1st Cir. 2012) (citing Bonas v. Town of N. Smithfield, 265 F.3d 69, 73 (1st Cir. 2001)). One such limitation on the jurisdiction of federal courts is sovereign immunity. See U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). The Eleventh Amendment evinces a recognition that "a State's . . . interest in immunity encompasses not merely whether it may be sued, but where it may be sued." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). The principle of sovereign immunity is fundamental to our system of federalism and "derives not from the Eleventh Amendment but from the structure of the original Constitution itself." Alden v. Maine 527 U.S. 706, 728 (1999).

Accordingly, states and their agencies generally are immune from suit by an individual in federal court. See U.S. Const. amend. XI; Hans v. Louisiana, 134 U.S. 1, 10, 13 (1890) (interpreting the Eleventh Amendment to bar a citizen of a state from suing the state in federal court, absent that state's consent); Pennhurst, 465 U.S. at 106 (holding that federal courts may not order state officials to comport with state law); Lebrón v. Puerto Rico, 770 F.3d 25, 32 (1st Cir. 2014) ("[A]

suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.") (citation omitted).

Sovereign immunity, however, is a "personal privilege" that a state "may waive at pleasure." Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 24 (1st Cir. 2001) (citing Clark v. Barnard, 108 U.S. 436, 447 (1883)). Congress may also abrogate the privilege if acting pursuant to its enforcement powers under section 5 of the Fourteenth Amendment. Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). The Wolskis can establish the Court's subject matter jurisdiction over their claims against the State Police only if they can show either that the Commonwealth has waived sovereign immunity or that Congress has abrogated it. See Pennhurst, 465 U.S. at 99. The Wolskis are unable to establish either;[6] consequently, the Court does not have jurisdiction to hear their claims against the State Police.

---

[6] The Wolskis do not put forth any grounds for the Court's jurisdiction over their state-law claims, see Am. Compl. ¶ 1. They simply note that the Court has "Federal Question Jurisdiction over claimed violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985." Id. The Wolskis presumably believe that the Court has supplemental jurisdiction over the claims against the State Police because they arise from the same nucleus of operative facts underlying the section 1983 claims against the individually named officers. See 28 U.S.C. 1367(a); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). They do not, however, explicitly make this argument for supplemental jurisdiction. See Am. Compl. ¶ 1. Nevertheless, the supplemental jurisdiction statute's "grant of jurisdiction does not extend to claims against nonconsenting state defendants."

### 1. The Commonwealth has not Waived its Sovereign Immunity

Though the Wolskis do not explicitly argue that the Massachusetts Tort Claims Act waives the State Police's immunity to their claims, see Renewed Opp'n Mem., that argument is implicit in the fact that they bring their claims under section 2 of that statute, see Am. Compl. ¶¶ 42-49. Their argument fails. States may indeed waive their immunity to suit in federal court, but courts apply a stringent test in determining whether there has been a waiver: the state must have specified "[its] intention to subject itself to suit in federal court." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985); see also Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction'." (alteration in original) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909))).

The Massachusetts Tort Claims Act -- under which the Wolskis bring the relevant claims -- does provide a limited

---

Raygor v. Regents of Univ. of Minnesota, 534 U.S. 533, 542 (2002). Therefore, even were this Court to rule that the Commonwealth had waived sovereign immunity or that Congress had abrogated it with respect to the Wolskis' section 1983 claim, the Wolskis would still have to show some exception to sovereign immunity to pursue their state law claims in this Court.

waiver of the Commonwealth's sovereign immunity. See Mass. Gen. Laws ch. 258, § 2. That waiver, however, does not apply to suits brought under the statute in federal court. See Mass. Gen. Laws ch. 258, § 3. The Supreme Judicial Court has held definitively that the Massachusetts Tort Claims Act grants exclusive jurisdiction over claims brought under the statute to the Commonwealth's Superior Courts. See Irwin v. Commissioner of Dep't Youth Servs., 388 Mass. 810, 810, 818-20 (1983) (citing McArthur Bros. v. Commonwealth, 197 Mass. 137, 139 (1908)). Accordingly, the First Circuit and this Court have consistently held that claims brought under the Massachusetts Tort Claims Act in federal court ought be dismissed. See, e.g., Caisse, 346 F.3d at 218 (holding Eleventh Amendment bars negligence claims against officers in their official capacity because "the Commonwealth has not waived its . . . immunity to suit in federal court"); Rivera v. Massachusetts, 16 F. Supp. 2d 84, 87-88 (D. Mass. 1998) (Woodlock, J.) ("[T]he Commonwealth has not waived its immunity from suit in federal court as to tort claims and therefore this Court lacks jurisdiction -- either original or supplemental -- over [the plaintiff's] claim against the Commonwealth."). Since the Massachusetts Tort Claims Act grants exclusive jurisdiction over claims brought under the statute to the Commonwealth's Superior Courts, it is impossible for the

Wolskis to establish the Commonwealth's waiver of sovereign immunity as to their claims.

### 2. Congress has not Abrogated the Commonwealth's Immunity

The Wolskis' remaining arguments regarding the Commonwealth's sovereign immunity are: (i) that Congress has abrogated state sovereign immunity by enacting section 1983 of the Civil Rights Act of 1871, see Renewed Opp'n Mem. 2-3, and (ii) that the "Prospective-Compliance Exception" to sovereign immunity permits federal courts to order state officials to conform their conduct to federal law, see id. at 3 (citing Milliken v. Bradley, 433 U.S. 267, 289 (1997) quoting Ex parte Young, 209 U.S. 123, 159-60 (1908)). These arguments, however, conflate the different claims brought in this suit and confuse the legal issue.

First, the Wolskis bring their claims against the State Police under Massachusetts law and not under the federal civil rights statute. See Am. Compl. ¶¶ 42-49, 55-59. Thus, section 1983 and the issue of abrogation are irrelevant here. Even assuming the Wolskis did allege claims against the State Police under section 1983, the State Police correctly note that sovereign immunity still bars jurisdiction over their claims because states and their agencies are not "persons" for the purpose of section 1983. See Renewed Reply (citing Will v.

Michigan Dep't of State Police, 491 U.S. 58, 64-67, 71 (1989)); see also Santiago, 839 F. Supp. 2d at 427 ("The Supreme Court has made it clear that section 1983 does not abrogate a state's Eleventh Amendment immunity." (citing Quern, 440 U.S. at 341-42)).

Second, the prospective-compliance exception to sovereign immunity is not applicable here. Though federal courts may issue prospective injunctive relief to compel state officials to conform their conduct to federal law, Ex parte Young, 209 U.S. at 149-53; Milliken, 433 U.S. at 289, they may not compel state officials to conform their conduct to state law, Pennhurst, 465 U.S. at 101-02, 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Even could this Court somehow provide prospective injunctive relief, it could not award the retroactive monetary damages the Wolskis seek. See id. at 102-03 (citing Edelman, 415 U.S. at 666-67) ("[W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief."). Since the State Police, as an agency of the Commonwealth, enjoys sovereign immunity which has not been abrogated, the Wolskis cannot carry

their burden of establishing this Court's subject matter jurisdiction.

Accordingly, all their claims against the State Police are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## III. CONCLUSION

The Court GRANTS the State Police's motion to dismiss, ECF No. 31. The Eleventh Amendment bars all the claims against the State Police. Congress has not abrogated the Commonwealth's immunity, nor did the State Police waive it. Therefore, this Court lacks subject matter jurisdiction to hear any of these claims against the State Police.

**SO ORDERED.**

*/s/ William G. Young*
WILLIAM G. YOUNG
DISTRICT JUDGE